Mr. Yudnokowsky? Mr. Chief Justice, and may it please the Court, the question before the Court today is whether the application of a revocation-on-divorce statute to a life insurance policy purchased before the enactment of that statute violates the Contracts Clause. Could you just, as a preliminary matter, after the divorce, but before the owner of the policy died, did he pay premiums? Mr. Yudnokowsky? I'd have to check. I'm not sure he did. He did pay them before the divorce. I'm not sure if the – the policy was live at the time of his death. I'm not sure. I think it may have been funded by the premiums that had already been paid on the policy. That was just a factual question. You may want to introduce your argument and then tell us what your general outline is going to be. I'll just answer your question. My understanding is that he had already paid enough into the policy that the policy itself paid the premiums at a certain point. All right. That could be. So I think that's – so I don't think he actually paid any more after the divorce. My understanding is that that's what he said. In the course of your argument, suppose this were the first statute on this subject. Would that make a difference? And then I could add to the hypothetical, suppose the empirical evidence were such that most people assumed that divorce would not change the beneficiary. Would that change?  You might have a broader outline you want to give us. No, I'm happy to answer those questions at the outset. So your first question is what if this was the first statute on this issue? Now, there's the first ever revocation on divorce statute. Well, I'd point out that even when the first of these statutes were enacted around 30 years ago, there already were a number of statutes, almost universally, in fact, that revoked wills upon divorce. So really the historic purpose of these statutes, according to the Uniform Probate Code, was to align the law of life insurance policies with the law of will. So we would take the position that even the first of these statutes that was enacted could be applied to existing policies under the Contracts Clause. To turn to your second question, which was what if, empirically speaking, someone didn't know. So first of all, I do think that, I don't mean to fight the hypothetical, but in this case, I think the legislature made the empirical determination that the typical person designates a spouse as a beneficiary because it's the spouse. And when the divorce happens, the calculus changes. And the basis of what? Where in the record? I'm sorry. Where in the record is the basis for their empirical finding? There's no legislative history doesn't include any surveys or anything like that. They were picking up off the Uniform Probate Code, weren't they? Yes. Minnesota was picking up the model statute and the model statute started it off. That is correct. So Minnesota, like numerous other States, simply implemented the Uniform Probate Code. I don't think that there's any hearings in the legislative record regarding the empirical findings underlying that code. I think it's just that there was a, I mean, if there's the supposition is on divorce, the policyholder will not want the ex-spouse to get the policy. But as has been pointed out, sometimes there will be a desire that the beneficiary remain unchanged. It was suggested by the other side that Minnesota could have accomplished this in a much better way. That is, they could have made it the condition of every divorce decree that the judge tell the couple, life insurance, do you have life insurance? Do you want to leave it as it is or do you want to change it? Yes. So first of all, no other statute actually does it that way without a revocation on divorce statute. Respondent does cite statutes like that from Virginia and Utah, but those States also have revocation on divorce statutes. These notification requirements are kind of a supplement to that. I guess Minnesota could have done that, but I don't think it would accomplish the goal of the statute, which was to align the law of life insurance policies with the law of wills, which is what the Uniform Probate Code said. Because, again, wills automatically, excuse me, a divorce automatically revokes the penalty. Justice Ginsburg's question goes to the weighing that some of our cases suggest that we have to do in these cases. And if you concede, as I believe you have, that Minnesota could achieve everything it wants to achieve by prospectively applying this law and then retroactively ordering courts to make sure that this issue is dealt with in divorce decrees, how does that inform our analysis as to the legitimacy and need for overriding contracts in these cases? First of all, I don't agree with the premise that Minnesota could have achieved all they wanted to achieve just by this notice requirement. First of all, I think that, again, the goal is to align the law of life insurance policies with the law of wills, and the will is revoked. So Minnesota wanted to also do that. Prospectively, though, you acknowledge it could have achieved all it wants to achieve. Yes, it's true. And retroactively, it could have done, as Justice Ginsburg suggests, and told divorce courts that this is a matter that they have to take up. So how is it that they wouldn't be able to achieve all that they wanted to achieve? Well, because first of all, I mean, the person might not do it, and you might get into all these disputes about what a decree means. One of the reasons for the statute is that decrees were often ambiguous on what they did, whether they were intended to revoke the designation or not. And the statute eliminates this ambiguity. That ambiguity wouldn't go away if you just told people, don't forget, you have to change your policy, they wouldn't do it. And then you have a dispute over what the decree means. So I think that the reason that no State has adopted that option without a revocation on divorce statute is precisely because those problems wouldn't be solved. I want to make one other point about the retroactivity issue, though, which is that, first of all, I don't think that the arguments that the statute doesn't really isn't consistent with the intent of a typical spouse. I don't think that goes to the retroactivity of a statute. It's more of an argument that the statute is sort of a bad idea, both going backwards and going forwards. And I don't think the Contracts Clause is designed to protect against just bad statutes generally. It's designed to protect against unfairly retroactive statutes. And here are the problems. Roberts, does the beneficiary on the policy, is that individual properly viewed as a third-party beneficiary under contract law? No, Your Honor. It's been conceded in this case that she, Respondent, had no contractual interest. That's why the sole interest she's protecting is Mark Sveen's interest under a theory of third-party standing. I think that if she had a protected interest, then this case would be very different. And by the way, the statute does not apply if there's a protected interest. Is that a matter of putting aside what you regard as a concession? I don't know if your friend would agree with that, but is it the uniform conclusion under State law, the common law, that a beneficiary is not, I mean, they are called the same thing, third-party beneficiary under contract law? Well, the relevant question is whether that person has enforceable vested rights in the contract. So you actually can buy an insurance policy, if you want to, that says that there's a third-party beneficiary who has a vested right, and you can't change it without the person's consent. You can buy that kind of policy if you want to, and this statute wouldn't apply by its terms to such a policy. But in this particular case, it was agreed as the case was litigated that it was Mark Sveen's rights at issue, because he had the right to change the beneficiary's designation at will. Kennedy, do any States say that the person is that the named beneficiary is a third-party beneficiary for contract purposes? Do any States say that? I think that so my understanding is they can be, depending on what the contract says. So you can always write buy insurance if you want to. Well, that was your answer. That designates the person as a third-party beneficiary with enforceable rights at the time it's purchased. You can do that in Minnesota or everywhere. And in that case, the statute wouldn't apply. But here in this case, as this case reaches this Court, the argument is that it was Mr. Sween's, the decedent's, contractual rights that were infringed. Respondent didn't have any vested rights in the contract at the time that Mark Sween bought it, because he had the right to redesignate at will. Mr. Kuczynski, on the retroactivity point here, the statute precedes both the divorce and the death. But what would happen if the divorce happened first, and then the enactment of the statute, and then the death? Would the statute have applied? So that's an unsettled question of State law. I think that there's an unpublished Minnesota's decision that says it would apply. In that context, because the person can still redesignate. So I think that does present some retroactivity concerns, but I think it's retroactivity concerns with respect to the divorce decree. In other words, it seems to be altering an employed term of the decree. So I think the analysis in that case would be kind of a due process analysis, because it's an issue of changing a judgment rather than changing the preexisting contract. Roberts. But your answer for contract clause purposes would be the same. Yes. With respect to the underlying insurance policy, yes. I think that the reason that there would be a retroactivity concern is that it would apply at the time of the divorce. Based on the decree rather than the contract. Yes, Your Honor. And I think that's an important point in this case, because, again, the contracts clause protects the reliance interest. Fundamentally, that's why it distinguishes between contracts that are signed before and after the statute's enacted. And in a case like this, I think the reliance interests really come into play at the time of the divorce, because the statute is inert until the divorce actually happens. And that's when people are thinking about this, because they're making a decision, okay, there's this changed circumstance, I'm no longer married to this person, do I want them to stay the beneficiary, or do I not want them to stay the beneficiary? And at the time that that decision is made, the existence of the statute makes a difference in what they do, because if they know the statute's on the books, they don't have to contact the insurance company and change the designation. And in this case, the statute was passed years before the divorce occurred. So I think it's the case that the contract clause protects the reliance interest. Sotomayor, could you tell me what are the various ways that an insured who wants to keep his former wife as the beneficiary, what would he have to do after the divorce? I know he could, the divorce decree could say yes or no. What other ways could the insured? He just has to send a letter to the company. So this life insurance policy, as is typical, you can change the beneficiary whenever you want. No, let's assume he doesn't want to. If he doesn't want to change. So he just has to send, so there's an automatic revocation. So if he wants to redesignate the spouse, you send in a change of beneficiary form. So how does the insurance company know that there's been a divorce so that they receive the letter and sort of go, why is he doing this? We already have that beneficiary. Well, I mean, I assume that the insurance company has lawyers who are aware that these statutes are on the books. Why does it matter? The insurance company gets a letter saying I want my wife to be the beneficiary, period. So that's the beneficiary. Yeah, it would be on the, I mean, the insurance company. It doesn't matter whether they know about the divorce, don't know about the divorce, who cares? Right. So if the insurance company gets a letter. I assume that they'll just put it in the person's file, they'll have a date on it, and then the person, the spouse will be re-added. I think in many cases this is resolved in the divorce decree, especially where here the statute was on the books at the time of the divorce. Any good divorce lawyer is going to say, look, there's this revocation on divorce statute. If you want to negotiate an agreement where she's still the beneficiary. Sotomayor So we have a Supreme Court case because there was an ineffective attorney? Or not. I mean, it's quite possible that the attorney was perfectly effective and advised Mr. Fien, you don't have to change the beneficiary designation because it's already happened. And now that he's dead, it's somewhat ironic that Respondent is trying to assert his rights, his rights to vindicate his intent when he's not here to say what he's going to do. Kennedy Well, in most cases I think where there's a lot of property, the insurance will be on the table and they'll talk about it. Sotomayor Yes, absolutely. Kennedy Your case applies to really small divorces, I think. I don't know which way that cuts. Sotomayor Well, I think that it's quite possible. So, I mean, we don't know what the agreement was. We don't know what Marks Fien wanted. He's not here. He can't say what he wants. Ginsburg But there was a settlement on this divorce. Kennedy Yes. Ginsburg And do we know what the former wife got in that settlement? You're urging that she doesn't get the proceeds of the insurance policy. What did she get? Kennedy I mean, the divorce decree is in the district court record. I don't recall the precise way that the property distribution happened, but that's all in the record. The divorce decree is in the record. And as far as I know, there is no concern that there is some unfair distribution of property. Kennedy The cases I've looked at are our cases, Allied Steel and Home Savings Zone, Brest- Dell and Bituminous Coal and so forth. Are there in the circuits or in the State courts analogous cases where contracts are changed retroactively and contract clause arguments have been rejected? Are there any cases that you can rely on out in the State courts that are analogous  Kennedy Yes. So I think the best analogy maybe I'd have are statutes that or rather statutes that affected the way property was divided in divorce. And this was the way I started out my remarks today. So, you know, in the 1970s, there was a very dramatic revolution in American divorce law. Before the 70s, divorcing wives were left often destitute after divorce. And a number of States, actually all the States passed statutes that fundamentally altered divorce and made the distribution of assets more equitable. Women still are statistically worse off in divorce, but it's better now than it was in 1950. And many times, divorcing husbands would lodge due process and contracts clause challenges to these statutes, essentially saying that when I bought the asset, I would have kept it in a divorce, and therefore, it violates the contracts clause to change the divorce laws. And those arguments were rejected by State courts, essentially saying it's a police power issue, and States are allowed to decide how assets are distributed in divorce. We view this as analogous because, really, again, the statute is inert until there is a divorce. And even when there is a divorce, all the statute does is it regulates. Breyer Counsel, do we know that the dead husband here didn't, as part of the divorce, wish this asset to remain with his ex-wife? Sometimes that is part of a divorce arrangement. That certain assets stay with the spouse. Is there any indication in this record at all that the decedent wished this asset to go anywhere else? I mean, we don't know. All we know is that the statute was on the books, and there is a divorce settlement, and the settlement does not override the default rule that perhaps the divorce lawyers told them about. I mean, we don't know what the divorce lawyers told them. That's all we know. So, no, I mean, we don't exactly know what he wanted, and we don't know at this point. That's certainly the case. But I think that it's just hard to say there is an impairment of his reliance interests when really the reliance interests came to play. Does anyone pay life insurance for the joy of paying life insurance? No. Isn't the specification of the beneficiary pretty important? I mean, Justice Washington in Dartmouth College said, you know, the bounty of a contract is essential to the obligation. Absolutely, Your Honor. Of course, the identity of the beneficiary is very important. It's the key of the policy. But what this statute does is it construes the divorce as an exercise, as an option to change the beneficiary, which the legislature has deemed that not everyone but most people want to do, and it still reserves the option in the policyholder to redesignate the ex-spouse, either in the divorce decree itself. Excuse me. Ginsburg. He had already designated the contingent beneficiaries were his children, right? Correct. So, yes, so his so and that's another reason we think that the statute isn't necessarily an impairment, because when the money goes to – it's not as though the insurer is relieved of the obligation to pay. The money simply goes to the contingent beneficiaries. Well, what if it didn't go to the contingent beneficiaries, then what? Well, if there's no contingent beneficiary, it goes into the estate, and it's – it's – the money is distributed. Well, let's say the statute said it goes to a charity or instead of the children, some nice thing for children. Would that be a contract clause violation? I think that that would be a violation. If not, why not? I think that would be a more difficult case for us. No, no, no, no, no, no, not so easy. Would that be a contract clause violation? I'm going to stick to my guns and say I don't think it was, but you don't have to agree with me to vote for us in this case. Okay. So first of all, I'm going to stick to my guns and say I don't think that would be a contracts clause violation. So the State says, contract, we don't care about your primary or contingent beneficiary, the money goes to the State. The Constitution of the United States says that a State cannot impair the obligations of a contract, and you don't think we have a problem. I think that would be a taking because it would violate the contract. No, no, no, no, no, contract clause. No, I don't think so. That would be a taking because it would violate the Constitution even by four words. No, I'm asking you about contract clause violation. You'd say that's no contract clause violation. There's no impairment of an obligation in that case. If the money just isjeets to the State? No, no, the statute just says it goes to wherever. The State, a nice charitable organization we'd all agree on that most people would support. If not everybody, most people, just like most people would want to change their beneficiary here. There's no impairment of an obligation in that case. All right. So we have the broader arguments and the narrower arguments in our brief. Under the broadest argument in my brief, that's not an impairment because it's like a will. We make the argument this is analogous to a will. A will isn't a contract. It may be bad for money in a will to be distributed to some party, but that's not a contractual obligation. But if you disagree with me, Your Honor, we have several arguments in our brief that distinguish this precise scenario you've discussed. So one of our leading arguments in our brief is that this is a mere default rule and that's not an impairment when there's only a paperwork burden. That argument which we make, which is supported by numerous 19th century cases long before Blaisdell, would not apply to the hypothetical you've just given. So we cite a number of cases in which there's these recording statutes that say if you don't submit a piece of paperwork to the government, you lose your rights altogether. They're extinguished. And those statutes did not exist at the time the contract was purchased. And in a series of 19th century cases, from a peak era of enforcement of the Contracts Clause, the Court had no difficulty upholding those statutes, saying it's just a paperwork obligation and therefore there's no impairment in the relevant sense. And so we also talked about remedies, right, as being distinct from obligations, didn't they? Some of those, that's true, but I think that these were not remedial statutes. I think that these destroyed the obligations altogether. Like, if you didn't submit the recording obligation, the mortgage was wiped out. So that's not — I don't think that's a remedial issue. I think that's wiping out the right. I mean, for instance, the Gilfillan case from the 19th century is another good example that has nothing to do with contractual remedies. That was a case involving a bondholder settlement. Roberts. Breyer. Reporting statutes merely said that your remedy would be different if you didn't record, right? It wasn't — no, the rights were completely wiped out. The land patent just ceased to exist. If someone else bought the property, your contractual rights were eliminated. I don't think that's really a remedial argument. It would just completely destroy the rights of the contract, period. Maybe the Gilfillan case is a better example, which is a good 19th century case, which is not a case about remedies. That was a case involving a corporate bondholder settlement, where the legislature was concerned that citizens wouldn't agree to the settlement, which might not leave the company afloat. So it enacted the statute saying that if you don't dissent affirmatively from the settlement, you'll be deemed to have consented to the settlement. And the Court had no difficulty upholding the statute, saying it's a mere paperwork obligation. All you have to do is send a letter to the insurance company, or to the company in that case. There's no impairment of a contractual obligation. And that's the same — excuse me, that's the same impairment in this case. You made the point earlier that — I understood you to make the point that this would be outside the scope of the contract clause because it was an exercise of the State's police power. Yes, that's a different argument in the context of divorce. But is that true to the full extent of the police power? Anything that we would characterize as a police power authority would be exempt from the scrutiny under the contract clause? No. This is an argument of the sui generis nature of divorce. So the relevant point for us is that even when Mr. Sphean — and I'm sorry to be jumping around between these arguments — but even when Mr. Sphean purchased the insurance policy, the State had the authority to decide what would happen to that beneficiary designation in a divorce. It's not like an ordinary contract where courts are bound by the intent of the parties. A divorce court, even at the time he bought the policy, had the power to give the policy to his ex-spouse as part of the equitable distribution of property or force him to keep paying proceeds to the ex-spouse as an ancillary to an alimony order. So I think that the — Sotomayor, my problem with the police power argument you're making is that I don't think it stands alone, meaning you can think that the State has a greater interest in certain areas like divorce or others, regulated fields like mineral, et cetera. But I don't think that State police power gives unbounded discretion to the State. To some extent, it's intermixed with what's the State's purpose and is it a legitimate thing it's doing. Your Honor, we are not arguing for unbounded State power. There's this particular argument about divorce which is premised on the fact that even when Mr. Spine bought the policy, the divorce court had made — it was the divorce court's decision on what would happen to that policy in a divorce. Sotomayor, well, that goes back to Justice Gorsuch's question. Could the State say, upon divorce, I'm giving the money to the State or I'm giving it to a charity, et cetera, and you said yes, but I wasn't quite sure why. It seems to me that even under State power, you have to be able to articulate some fit between the need and the solution. Right. So my response to Justice Gorsuch was about a different argument about treating insurance policies like wills. With regard to a divorce, I agree with you that I don't think that just giving the money to a charity or to the government could conceivably be deemed as an exercise of preexisting police power, because at the time Mark Spine bought his policy, a divorce court couldn't just randomly take the party's assets and give it to the government to discourage divorce or something. That was not within the repertoire of options for the divorce court. But the divorce court could revoke beneficiary designations. That happened all the time. So I think that the difference between that — in the context of our divorce argument, the difference between Justice Gorsuch's hypothetical and this statute is that this statute reflects the exercise of a preexisting power vested in courts. And — Kagan. Please. No, go ahead. I'm sorry. So this might be an unfair question, but one of the things that struck me in reading your brief and now in listening to you, it's an unusual thing we see in your brief, this kind of we have five arguments in varying levels. You know, it's the police power, it's not a contractual obligation, it's not an impairment at all, it's not a substantial impairment. Maybe it is, but it's justified. Did I get all those five right? Yes, you did. Really, which one do you think? Because — You know, you're answering some of our questions like, oh, that's an answer from column one. And no, now I can give you an answer from column three. But when we have to decide this case, we presumably have to pick one. And if we were to go with you, I mean, where do you really think that the — this is — the question is here? I think that the cleanest way to vote for us, and I hope you do, is that it's just — it's really just a default rule, and it's just a paperwork burden, and there's no interference with the reliance interest, because really the reliance interest come into play at the time of — So you're saying it's not a substantial alteration, is that the same argument? Yes, I think so. And there's really two pieces to that. One is that you only have to send in a letter to the company. And this Court has said in a lot of cases that that's not a sufficient impairment to implicate the contracts clause. And also the fact that the goal of the contracts clause is to protect reliance interest. And here, realistically, the reliance interest come to play at the time of the divorce, because the statute's inert until then. When you say it's not a substantial impairment, are you acknowledging that it is an impairment, at least in terms of ranking your arguments? I don't think it's an impairment at all, but I think that because this Court has held that insubstantial impairments are not impairments at all, I think that's sort of an easier way to get to where we want. But certainly, we argue in our brief, and I stick to our argument today, that there's just not an impairment period, because it's simply the exercise of an option that leaves the option to redesignate the beneficiary by sending a letter. I also think the divorce aspect of the case is important, and I do think the arguments sort of go together. The State has broad authority over divorce. It always has. We quote John Marshall and James Kent, who have given broad powers to the legislature over divorce. And if the Court is concerned that you don't want to give the legislature unlimited power over divorce, then you can say, well, the legislature has broad powers to legislate the effect of a divorce decree, and how, you know, maybe even if that power is not unlimited, it at least extends to imposing this kind of paperwork burden, which even outside the divorce context this Court has already held, does not constitute a substantial impairment. So I'd like to reserve my time, if I may. Thank you, counsel. Mr. Derefsky. Mr. Chief Justice, and may it please the Court. The Constitution forbids States from passing any law impairing the obligation of contracts. Here, Minnesota directly and retroactively altered the contractual means by which policyholders select who will receive policy proceeds. And it did so even though it had evident alternatives, such as requiring notice of the revocation statute and divorce decrees, to achieve its purposes equally well, but without impairing contractual obligations. Minnesota, therefore, violated the contract's clause's clear prohibition whether this Court returns to that clause's original understanding, takes the smaller step of treating impairments of public and private contracts alike, or simply applies current doctrine. Ginsburg. The Court, it has been pointed out, in a divorce setting can say, presented with this very situation, the children get the proceeds of this policy, she's out, we've provided for equitable division of other property. If a divorce court can do that, why can't the legislature make the same assessment? Because the contract's clause applies to laws passed by legislature and it's not to the actions of courts. Chief Justice Taft explained that in an opinion a long time ago, and that opinion itself cited 20 other precedents of this Court saying the same thing. It follows from the text of the contract's clause that it speaks only of laws. And it makes sense that the contract's clause would only apply to legislatures rather than courts, because courts are constantly in the business of addressing contractual disputes, and the framers did not mean to constitutionalize every contract's clause case. But when a State had to do that. Sotomayor, I'm sorry, judges do what they do as a result of laws, meaning they don't just decide to redistribute insurance proceeds out of the kindness of their heart or they do it because there's a specific law that gives them the right to do that. So I'm not sure what the difference is. If the law is compelling it or the law is permitting it, then it's the judge as well as the law. I think there's a difference between courts exercising their discretion and States enacting laws that have this kind of. Well, but Justice Sotomayor's point and Justice Ginsburg's point is the same. Suppose the State said that in a divorce decree the Court will assume that the intent is to leave the beneficiaries the same or to leave the beneficiaries different, and the Court acts under that statute. Then you have a contract clause. Just the fact that the Court is implementing the State's policy doesn't mean that it's a court decree, not a State decree. I think there is — there has historically been a fundamental distinction, though, between what courts do and what legislatures do, and that's a result of the precedent and of the common-sense notion that the contracts clause can't apply to what courts do, or else every time a court does anything with respect to a contract outside the divorce context as well, every time a court declares a contract unconscionable, that would be a contracts violation. That just can't be. But this Court has long recognized, as the framers intended, that when a legislature passes a law that impairs contracts, that is getting directly at the heart of what the contracts clause was intended to cover. Breyer. Well, I take it here the contract is, let's call him Mr. Smith, he has a contract with an insurance company. That contract provides that after a divorce the money will still go to the designated beneficiary. They pass a law, and it says it will not go to the extended beneficiary that you initially designated, unless you act affirmatively, right? That's the contract. That's the situation we're in front of. Yes. Yes. Okay. Now, I found this three cases from the 19th century, 1870s, 1880s, 1923, not a period when this Court was about to interpret the contracts clause loosely. I think that's fair. One of the cases says the legislature passes a law after Smith, who is a bondholder of a corporation, enters into a contract with the corporation. This is a contract, Smith and the corporation. They have a bond. The legislature passes a law that makes that bond less valuable. Less valuable. All right? Applies it retroactively. And this Court says that's fine. You know why? Because all that Smith has to do in order to stop its value going down, rejecting the change, is affirmatively notify the company. And they say, no, that isn't a big deal. Okay? Case two. Smith buys property at a tax sale. At a tax sale. All right? Now, the owners can get it back, by the way, if they pay their taxes within a year or some period of time. They pass a law retroactively saying, Smith, you can't keep your property unless you tell the owners they're about to lose it. That would seem to make quite a difference. Because after all, if they find out, they might object and pay the back taxes. Court says, not a big deal. It doesn't violate the clause. Case three. Okay? What's case three? Conley. Yeah. Smith has an agreement with the mortgage company. It says, where there is foreclosure, the mortgage company has to do A, B, and C. Retroactively, the legislature says, oh, by the way, mortgage company, you also have to do D, which is file an affidavit. Surely an affidavit is no easier to file than to write a letter to an insurance company. The court says, that is not an obligation. You have not violated the contracts clause, because filing an extra affidavit is not a big deal. So when I read those three cases, I looked at what they said was not a big deal. Then I looked at the obligation here, which is simply write a letter to the insurance company if you don't like their changing the designation that I originally put out. And I thought, maybe this isn't a big deal, which, of course, is just what they're arguing. So I would like to know, how do I, forgetting Blaisdell, hold for you? First, Justice Breyer, let me emphasize that the key term of this contractual ‑‑ this contract, the life insurance contract, provides precisely how the policy holder is to designate the beneficiary and in turn assures the policy holder that that is the beneficiary that will be paid. That is different. Breyer, just like the mortgage contract. I disagree that it's ‑‑ So go ahead, sorry. That is different than the cases that you were talking about. Let me start with the Gilfillan case. That is the case involving the bond and the retroactive change there. The court went out of its way in the Gilfillan opinion to point out that the bond contract there was a particular kind of contract in which bondholders effectively assume obligations to one another. It's a type of contract where there is, like a duty of good faith and fair dealing, to your co‑bondholders. That's very different than our case, where the policy holder has a direct and explicit assurance about the beneficiary designation. So there's a difference in the nature of the impairment. Moreover, in the Gilfillan case, the court also focused on the practicalities and whether or not it was still reasonably possible for the bondholder to protect his original contractual rights. And the court noted that there was both actual notice of the change and sufficient time to object to it. Whereas in this case, the entire premise of the Minnesota law, according to the Petitioners, is that policyholders are inattentive to their beneficiary designations. It is simply ‑‑ it's paradoxical to expect an inattentive policyholder, somebody who is presumed not to know about this or to be paying attention to it, to protect their rights by being aware of the law and then objecting to the change. And so the practicalities here cut exactly the opposite way as in ‑‑ Kagan. Kagan. I'm sorry, to ‑‑ that might be true if the divorce preceded the statute, right? Because presumably the time when even an inattentive person is going to come upon this problem is when the divorce occurs. And as long as the divorce is subsequent to the statute, I don't see how you can make that argument. Well, I would agree with you if Minnesota had taken the same kind of step that Virginia has taken and actually required the divorce decree to inform the divorcing parties about the revocation on divorce statute. At least under modern doctrine, that would solve our concerns, because at that point, you're right. As part of the divorce, the policyholder, the divorcing party, would be aware of the change. But there's no reason to presume that as part of the divorce, absent such a notice requirement, that the inattentive policyholder is aware. Indeed, the whole premise of the statute is that people do go through divorces, but this issue of beneficiary designations is not something that they are paying attention to. And so ‑‑ Ginsburg's fair assumption that most people, when they divorce, do not want their former spouse to be enriched beyond whatever the law requires. If you have to make a guess, you're talking about impairment of the policyholder's rights. But the Minnesota legislature has said not 100 percent, but most cases of divorce, the spouse who is the policyholder would not want the former spouse to get the proceeds, would much prefer they go to his children. Justice ‑‑ Isn't that a reasonable assumption for a legislature to make? I don't think that it is, at least not without some evidence in the record to that effect. And there's no statement of legislative purpose. There's no amicus support from Minnesota or from any other States whose laws are at issue here as to the empirical assumption that your question suggests. I think that there are some people who would want to keep ‑‑ who would want to change beneficiary designations, but there are plenty of reasons why people might not. That's why the Federal Government and almost half the States don't have this kind of a law. And ‑‑ I'd like to ask the question I asked Mr. Unikowsky. Do you know what the settlement was in the divorce decree, what Maryland got out of the divorce? Justice Ginsburg, that is in the district court docket for that is 45-3, and it spells out who got which car, and I think there was a snowmobile and an ATV and some other property, but it's all spelled out at district court 45-3. But what the divorce decree ‑‑ two things of note on the divorce decree. One, it is silent about insurance. And so we simply don't know one way or another, based on the divorce decree itself, what Mr. Sveen's intentions were. We do know that Ms. Mellon put an affidavit in the record that they had maintained ‑‑ that they had reached an oral agreement to maintain one another as beneficiaries. Yes, but that was not approved. That's true, but the only evidence in the record one way or another, that didn't satisfy Minnesota's clear and convincing evidence standard for an oral contract, but if Your Honor's question is what evidence do we have, that's the only evidence that we have, and she in fact kept him as her policy beneficiary up until the time of his death. Alitoson What if there were ‑‑ what if there was evidence that Mr. Sveen was very well aware of this statute at the time of the divorce, but did nothing? So suppose there was testimony by ten witnesses that at the time of the divorce he got a copy of the statute and he read it. Would that make a difference? I still don't think it would make a difference, because the way the Court has considered these sorts of impairment questions and whether ‑‑ whether it is possible to overcome the impairment by informing the insurance company has been on an across‑the‑board basis, not based on the particular facts of the case. So the McGehee case, which is from the era that Justice Breyer was asking me about earlier, is an example of this. That was the case where retroactively the State required bondholders to produce the original bond, not just the bond coupon, in order to collect. And there were surely some ‑‑ some bondholders who could have produced the original bond, but many who couldn't. And the Court ‑‑ Breyer Which is easier, which is easier, to produce an original bond that you bought, say, 20 years ago and who knows where it is, or to write a letter saying, please, keep my wife as a beneficiary? That's a loaded question. Alitoson Well, but I think it's a loaded ‑‑ it's a loaded question because it has a premise built into it that it's only easy to file the form if you are aware of the need to do so. And the whole premise of the Minnesota law is that people are not aware of the need to do so. Breyer It's likely. I mean, I don't know. I'm not a family law expert, which family law is the most difficult subject I think there is. It's horrible, human, terrible. It's really difficult. But if I were to guess, I would guess that when there is a divorce proceeding, there is a lawyer quite often, usually, and he discusses with his client, the lawyer, what ‑‑ that this is likely to affect property. Now, I'm not saying which, but a lot of people would think, hmm, I have an insurance policy. Now, I don't know that that happens, but I suspect. Alitoson I suspect that sometimes it does, but it doesn't always happen because not everybody even ‑‑ Breyer You are absolutely right on that. I mean, that might not be a fair question because sometimes people will and sometimes they won't. And I think you are originally saying often they won't think of it, and that's true, and sometimes they will think of it. That's true. I don't think actually perhaps neither of us knows how often they will. Dabney Right. But I think the point is that what the Contracts Clause is concerned with is the impairment of the rights of those who weren't counseled, who are not aware, who don't know that they need to file the form. Kagan If I could come back to Justice Alito's question, because in answering Justice Alito, you say we don't look to Mr. Sveen in particular, even if we know a lot about him. We look to this broad class of people who are in this situation. And if that's true, I mean, I guess I had sort of conceptualized your argument as the exact opposite. Well, we don't know anything about Mr. Sveen, so even if it's true that people generally want to give their life insurance policy to their children, that doesn't matter because we don't know that about Mr. Sveen. But if you're saying really we look to the broad class of people, then why shouldn't the broad class of people that we look to be, you know, why shouldn't we make the same judgment that the legislature made, or at least accept that judgment, that if we look to the broad class of people, most of them would rather give their life insurance policy to their children than to their divorced spouse? Because I think it's indisputable that whether or not most would, many would not. And the contrast to the question of the broad class of people, I mean, if the question is the class rather than the individual, then what option do we have other than to say something in general about the class? Because I think when you speak about the class as a whole, you're also encompassing some individuals within that class who aren't going to want their rights to be abrogated by the legislature. And what the Contracts Clause is concerned with is making sure, even under this Court's modern jurisprudence, that the legislature doesn't abrogate the rights of some, even if it's intending to benefit others by effectuating their intent. And here are the other options. Alitoso, your answer to me, to my question, leads to the conclusion that you are impairing the insured, the obligations that the insured counts on in, in relation to the contract. There's a contract. The meaning of the contract is determined by State law. The insured knows at the time of divorce that under State law, the meaning of the contract is that the ex-spouse, the now ex-spouse, will not be the beneficiary. The alternative beneficiaries will receive the money. And you're saying that doesn't matter, that the insured may have counted on this. Still, the State law dictating, interpreting the contract is overridden by the Contracts Clause. And that's because for Contracts Clause purposes, the relevant law is the time, is the law that is in effect at the time of the contract. That's the relevant law that informs what the contractual terms mean. But I thought this statute was in place at the time of the contract. No, it was not. The statute was enacted in 2002 and the contract was from 1998. But it was in place at the time of the divorce. It was in place at the time of the divorce, and as we've been discussing, there's simply no evidence one way or another besides the conduct of the parties after the divorce, with respect to Ms. Mellon's beneficiary designation, no evidence that Mr. Sveen either was or was not aware of it. The divorce decree that I cited earlier at 45-3 has a very long appendix with various notices that Minnesota already requires divorce courts to provide and divorce decrees to include. The State has no interest that I can fathom and certainly no interest that any State has come forward to advance for why it needed to achieve its purported goals in this case the way it did. And by doing this the way it did, it is impairing the contractual rights of at least some policyholders, those who have good reasons for not wanting to revoke their beneficiary designations. I took Justice Alito's asking something like this, and I am curious. A lot of people did buy life insurance policies before 2002, which don't say anything about it. They bought it before. A lot of people probably were divorced between 2002 and 2018. So if you win this case, what happens to all those people who were told by their lawyers that State law means that your wife is no longer the beneficiary unless you write a letter to the insurance company? And they say, good. I don't want her to be. I want my children to be. Great. Oh, what happens to those people if you win this case? I think that their beneficiary designations are determined in accordance with the terms of their contract. You're saying, obviously, the question is, do all those people who thought their children would get the money, they're just out of luck. Is that right? They're out of luck unless they redesignate. They have to write a letter. Right, exactly. Unless they redesignate the insurance. Somebody has to write a letter. Okay. I think we've established that. They have to find out about this case if you win, and maybe they just read Supreme Court cases. We all do. And they read the contract clause, and they've read the Dartmouth College case. Either that or the State statute. Okay. My question for you, though, I want to pick up where Justice Breyer left off, and that's recording statutes. What do we do about those? This Court has long held that those are fine. And even though they pose some limits on contracting, and your colleague on the other side suggested that the best line we draw is how substantial the impairment is, this Court has approved recording statutes as an impairment. What do we do about those? The recording statutes are different for a few reasons. First, the recording statutes don't directly change an express term of the contract in the way that this law does. Here we have a contract with a benefit. I'm sorry. It takes away. An express term of the contract. It does away with the contract. You fail to record, you get no protection. Here you get a beneficiary, one you've designated as an alternative, so you get somebody. The money's paid. That's a lot better than having your rights revoked completely. First, Justice Sotomayor, the contract in those cases didn't speak one way or another to the recording obligation. That was simply a procedural change as to remedy that legislatures adopted after the fact. Second, the recording statutes don't leave the property owners without recourse. If Mr. Smith, from Justice Breyer's hypothetical, sells the same property twice, only one of them can get the property, but the other one still has recourse against Mr. Smith for double-selling the property. And so the recording statutes are fundamentally different because they're not acting directly on the contract in the same way as the law that's at issue here. And there's still — there is still a remedy. It's not nullifying the entire point of the contract, which in the life insurance context is to provide for a particular beneficiary. I'd also suggest, again, from this era of cases, that the relevant analogs are the Seabrood and the McGehee cases. And those two cases stand for two propositions. One, Seabrood stands for the proposition that when a legislature does directly change a term of the contract, that in that situation the Court has found — has found a contracts clause violation. So in Seabrood, there was a bond that provided for a particular procedure for collecting the taxes that would be used to pay the bonds. The legislature subsequently changed that, and the Court found a violation. That's analogous to the situation here where you have a contractual provision about beneficiary selection. And then McGehee, as I was mentioning earlier, that is the case where — yeah, that is the case where the bondholders had to produce the original bond, and the Court, looking at the class of bondholders as a whole, recognized that some bondholders might be able to meet that requirement, but in order to protect the rights of those who couldn't, and it was impractical for those who couldn't to somehow produce these bonds, the Court recognized that there was a contract clause violation. Sotomayor, I think that Justice Gorsuch's point, which is, we look at the nature of the impairment, how difficult is it to do whatever is being changed? And there's a big difference between producing something you may have lost 20 years before and writing a letter to an insurance company or including it in your divorce decree or doing something else. It doesn't cost you much to do. So, again, I think those cases stand for the proposition that there isn't — the reason there wasn't an impairment there is that the contract was not being directly altered by the legislature in the way that it is here. Even if you look at it as a practicability question, though, the practical problem here is that policyholders are presumed to be unaware. And, again, under the original understanding of the contract clause, any impairment was sufficient. At a minimum, if the Court were to equalize the treatment of public and private contracts, essentially ending the experiment begun in U.S. trust, the State here has a less restrictive way of achieving its objective simply by providing notice. And lastly, even under the Court's more flexible modern precedents, if the contract clause means anything at all, it's that the State can't impair contractual rights gratuitously. Where there is an alternative that works equally well, at a minimum the State has to do that much. And even under the Court's modern cases, the Court has said repeatedly that the contract clause is more than just rational basis review. And so what does that mean? At a minimum, it means, one, the State — litigants after the fact can't just come in with conjecture about what the State legislature was trying to achieve. There must be some showing of that in the record. That's what the Court said in Allied Structural. And second, where contractual rights are impaired and there's a ready alternative, at a minimum the legislature ought to be required to take that particular alternative. Mr. Unikowsky suggested — Ginsburg. What is your position on a policy that is taken out after the statute's enactment? Then it's okay, right? Yes. That would — if the policy is taken out after the statute's enactment, then the statute is not acting retroactively on that policy. What about the retroactive application of a Slayer statute? So I think under modern contract clause doctrine, that would probably pass muster, because the State's interest in ensuring that murderers don't collect life insurance proceeds is, I think, both intuitively and — What about — what about the original understanding? So under the original understanding, I think it's a harder question. I think arguably, if the Slayer statute were viewed as a form of punishment for murder, then that could be within the very narrow original understanding of the legislature's police power. But that's very far removed from this case, which doesn't address, again, the original understanding of the police power. Something had to be directly related to health, safety, or morals. So Slayer statutes might survive under the original understanding. I think they almost surely would survive under the modern understanding, because the interest is much greater than the minor interest that's at issue here. And I don't think that just a notice requirement wouldn't be sufficient in that case. But it's also, I think, an example on the other side of a change in the status of adopted children to make them, for all purposes, the same as biological children. So I think under the original understanding, that would be a contracts cause violation. Under the modern test, there is a court — there is a case we cite in our brief that has found such a change to be unconstitutional. It would, however — there would, however, be a stronger case for its constitutionality than there is here if, under the modern approach, the State thought that it had a strong policy interest in ensuring the equal treatment of adopted children. That, however, is fundamentally different from this case, where no one has made any showing of a strong policy interest in effectuating the presumed intent of some policyholders at the expense of the intent of others. Mr. Unikowsky, in his argument, made a few points as to why the Virginia alternative or a notice alternative would not be sufficient that I'd just like to briefly address. One, the notice — the notice that is provided can exist alongside the revocation on divorce statute. In other words, a State is free to have, under the modern approach, the revocation on divorce statute on the books so long as it tells people. And it's also free to do the same thing — have the same revocation on divorce statute for wills and for life insurance policies, and also to provide the same notice for wills and for life insurance policies. And so in that respect, that achieves the goal that Mr. Unikowsky posited of achieving equal treatment of wills and life insurance policies so long as that is actually what people want, as long as that is actually what the divorcing parties want. As for disputes about what a decree means, the revocation on divorce statute can take effect so long as there is notice. And so there doesn't need to be a dispute about what the decree means if, in fact, the revocation of divorce statute has simply taken effect. If the Court has no further questions, again, the contradiction is that the court The Contracts Clause is absolute in its language. Chief Justice Marshall recognized long ago that this was a clause so clear that it could hardly be misunderstood, and recognized that it applied to all manner of contracts. We ask that the Court bear that original understanding of the Contracts Clause in mind in resolving this case. And even under the more deferential modern approach, that original understanding ought to inform the approach, particularly where, as here, there's a ready alternative to achieve all of the State's objectives without impairing anybody's contractual rights. Roberts. Thank you, counsel. Five minutes, Mr. Unikowsky. Unikowsky. Thank you, Mr. Chief Justice. So there's been a lot of different arguments floating around at the argument today. There's arguments about divorces, about wills, about reliance, and others. So I'd like to just say a few words about what I think would be a kind of a clean way to resolve this case narrowly that wouldn't open some of the parade of horribles that some members of the Court have been concerned about. Some lower courts have conceptualized life insurance policy beneficiary designations as similar to wills. That's a broad argument that produces some of the concerns that Justice Gorsuch posed questions about. We stick to that argument, but the Court doesn't need to decide that in order to vote in our favor today. So I think the first important principle is that this is a divorce case. The Court isn't reaching out and interfering with private relationships. The statute only comes into effect when people come to the Court and invest the Court with jurisdiction to divide their assets. And my colleague discussed what the statements of Chief Justice Marshall. Chief Justice Marshall himself said that the contracts clause has never been understood to restrict the general right of the legislature to legislate on the subject of divorces. So I think that we have a very strong originalist argument that specifically in the context of divorce, the police power simply — Isn't that because Justice Marshall also said that marriage contracts are not within the cognizance of the contract clause? And I don't think anyone disputes that life insurance policies are within the cognizance of the contract clause, or do you? No, I — certainly they are. But the statement that Chief Justice Marshall made is that the general right of the legislature to legislate on the subject of divorces has not been questioned. And I think this is an a-for-siori case. Because marriage contracts are not within the cognizance of the clause, right? I think this is an a-for-siori case. That's not why you're on. I don't think so. It's true he said that. I acknowledge that in our brief, that that was the context in which he was saying it. But I think that this is an a-for-siori kind of case, because if the legislature has the power to sever a contractual relationship, a marriage relationship altogether, which will necessarily have dramatic impacts on the party's property interests, I think it's a much lesser power to simply regulate one way in which a divorce decree severs that relationship. And I think that it's all — there's also — history provides a different lesson, which is that there's never been a case, ever, until a few cases on the circuit split in this case, where any court has held that a statute regulating the effect of a divorce decree violates the contracts clause, and it's not for lack of opportunities, because the law of equitable distribution of property has changed dramatically over the two centuries, and yet this type of argument has never succeeded. So I think that at a minimum, especially in the context of its tradition of State law control over divorce, there's a broad police power there, but I don't think the Court has to hold that divorce courts have unlimited power. I think that if the police power over divorce means anything, it's the power to enact this very narrow kind of default rule. You know, my colleague talks about the Siebert and McGehee cases from the 19th century. Those were dramatically different. Those were post-Civil War era cases where State legislatures passed laws to prevent hated out-of-State bondholders from being paid back. That was the purpose of these laws. Professor Ely's book about the contracts clause, who wrote an amicus brief in this case, discusses the Virginia statute, where there's a whole bunch of cases where the Virginia legislature specifically tried to prevent bondholders from being paid back by putting these requirements they knew that they couldn't meet. And then there's the Siebert case, where there was a contractual right to force courts to pay money on these bonds, which was abrogated. The new law provided that the prosecutor had to get the county court to pay to raise taxes, which was never going to happen. So these were laws that were specifically designed to prevent creditors from being paid back. That can't be more different from this case, which really is a paperwork obligation, which is quite comparable to the recording obligations that we talk about. In fact, I think that this is less of a burden, because as Justice Sotomayor pointed out, you don't submit that form, your land patent is completely wiped out, you don't get anything. That strikes me as a far greater impairment than this case, where the failure to submit a form is actually going to vindicate the person's intent in the typical case. So I think that when you talk about the broad police power over divorce, and then the fact that it's only writing a letter, I think the statute is constitutional, especially the third thing I'd like to talk about is the reliance issue. Because this is a case about retroactivity. The question is not whether the Court agrees with the statute or not. The question isn't even whether it typically vindicates the intent of the spouse or not. That's a policy question, both going forward and backwards. The question is whether it retroactively impairs a contractual obligation. And the answer is no, because the reliance interest, as I think even my colleague conceded, really comes into play at the time of the divorce. That is when people are thinking about this. The statute doesn't even do anything until the divorce happens. And I think that reliance is important to the Contracts Clause, because that's why the clause distinguishes between statutes passed before and after a contract, because of the recognition that the contract itself generates reliance interests. And so, therefore, if it's essentially undisputed that reliance interests really come into play at the time of the divorce rather than at the time of contracting, it's just not an impairment of contractual obligations in the relevant sense. The only thing that would be impaired, the only reliance expectations would be impaired are those of Marks V, who might not be able to get the proceeds, or who might not be able to distribute the proceeds as he intended. Roberts. Thank you, counsel. The case is submitted.